UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------
In re:

ROGER C. D'AMICO and                            Case No. 05-19217
THEODORA K. D'AMICO,                            Chapter 7

                    Debtor(s).
-----------------------------------------------------------
GREGORY G. HARRIS, Chapter 7 Trustee,

                    Plaintiff(s),
    -against-                                 Adversary No. 06-90188

ROGER C. D'AMICO and
THEODORA K. D'AMICO,

                    Defendant(s).
-----------------------------------------------------------
APPEARANCES:

CHRISTIAN H. DRIBUSCH, ESQ.
*Attorney for Plaintiff/Trustee*
5 Clinton Square
Albany, NY 12207

MICHAEL KURZ, ESQ.
*Attorney for Defendants/Debtors*
2212 Western Ave.
P.O. Box 1502
Guilderland, NY 12084

Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

    Currently before the court is an adversary proceeding commenced by the Chapter 7

Trustee, Gregory G. Harris, Esq. ("Trustee"), objecting to the discharge of Roger C. and

1

Theodora K. D'Amico ("Debtors") pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (4)(A).[1] The Trustee filed an adversary complaint on July 21, 2006. The Debtors answered the complaint on August 21, 2006.

After a denial of a motion for summary judgment, a trial in this proceeding was held on March 16, 2007. The Trustee, the Debtors, and a character witness for the Debtors testified at the trial. In lieu of closing arguments, the parties were afforded the opportunity to file post-trial memoranda of law. The final submission was filed on June 29, 2007, at which time this matter was taken under advisement.

## JURISDICTION

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(J), and 1334(b).

## FACTS

The relevant facts are as follows.[2] Roger D'Amico is a service manager at Chris' Coffee Service. (Trial Tr. 48, Mar. 16, 2007 (No. 38).) At the time of filing, he earned approximately $3,000 a month. (Tr. 49-50.) Theodora D'Amico has been a realtor for 14 years, and her income is based solely on commissions. (Tr. 34.) She is billed monthly by her employer RE/Max Premier for staff, office space, and furniture rental. (Tr. 31.) Financially, 2005 was one of the worst years Mrs. D'Amico has had in the real estate business. (Tr. 34.)

In August 2005, the Debtors consulted an attorney regarding filing for bankruptcy, but decided not to file. (Tr. 27.) Instead, in an attempt to pay their outstanding debt, the Debtors

---

[1] This case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). Thus, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (2004), unless otherwise indicated.
[2] The facts are gleaned from the joint statement of facts (No. 33), submissions of counsel, and the trial transcript.

2

sold their 1968 Camaro ("Camaro") to a relative for $20,000 payable in two installments: $5,000 on September 14, 2005, and $15,000 on October 11, 2005. (Tr. 39, 44.) On September 19, 2005, the Debtors received a Notice of Intent to Levy from the Internal Revenue Service ("IRS"). (Tr. 26.) Thereafter, Mrs. D'Amico liquidated a tax deferred annuity with Lincoln Financial Group ("Annuity") on October 11, 2005, and directed the monies be deposited into a Bank of America account. (Tr. 17-18.) On October 14, 2005, the $7,061.17 proceeds for the Annuity were deposited into the account as requested. (Tr. 18.) During this time in October, the Debtors made the following payments (collectively "Payments"):

- Bank of America - $700.00
- Dell Catalogue Sales - $894.29
- United States Treasury - $6,978.96
- RE/Max Premier - $2,510.00
- Liberty Mutual - $1,434.00
- ABN Ambro - $1,258.39
- Toyota/Lexus Financial - $625.60
- RE/Max Premier - $2,500.00
- Bank of America - $697.56
- United States Treasury - $2,000.00

(Tr. 6-12.)

Despite the Payments, the Debtors could not meet their financial obligations and saw no alternative but to file bankruptcy. (Tr. 36.) On October 13, 2005, in response to the Debtors' inquiry, their counsel informed them that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a major overhaul of the Bankruptcy Code, was to take effect on Monday, October 17, 2005. (Pl.'s Ex. 9, ¶ 5.) The Debtors then met with their attorney on Friday, October 14, 2005 (*id.*), and their Chapter 7 petition, with related schedules and statements, was filed later that day (Pl.'s Ex. 1). The petition and schedules were prepared based

3

on the Debtors' answers to questions posed by their attorney. (Tr. 28.) The Debtors assumed the petition and schedules were correct and signed it without review. (Tr. 28, 48.) Information regarding the sale of the Camaro, the liquidation of the Annuity, and the Payments was not disclosed in the petition or schedules. (Tr. 13-16.)

The United States Trustee sent a letter dated October 28, 2005 (Pl.'s Ex. 4) and the Trustee sent a letter dated November 2, 2005 (Pl.'s Ex. 3) seeking further documentation and explanations from the Debtors concerning their schedules. The Debtors filed a response to both letters on November 15, 2005, which included an affidavit attesting to their expenses. (Pl.'s Exs. 5, 6.) On November 16, 2005, the Debtors filed amended schedules, which removed the Annuity from schedule B. (Pl.'s Ex. 2.)

While reviewing their petition with counsel prior to the Debtors' § 341 meeting of creditors, Mrs. D'Amico became aware that the sale of the Camaro, the liquidation of the Annuity, and the Payments were not disclosed in the petition. (Tr. 29-30.) Mrs. D'Amico testified that after discovering the omissions with her attorney, it was her intention to disclose the information left out of the petition to the Trustee. (*Id.*) At their § 341 meeting on December 20, 2005, the Debtors did in fact disclose the sale of the Camaro and the liquidation of the Annuity in response to general questions asked by the Trustee. (§ 341 Meeting Tr. 11-12, Dec. 20, 2005 (No. 16).) The Debtors also disclosed that they used the proceeds from the sale of the Camaro and the liquidated Annuity to pay bills, RE/Max Premier invoices, and mortgage payments. (Jt. Stip. of Facts (No. 33) ¶¶ 17-19.) In response to the Trustee's request, the Debtors provided a detailed accounting of the Payments. The Debtors also supplied the Trustee with proof of value of the Camaro. (Jt. Stip. of Facts ¶ 10.) The Trustee did not specifically request that the Debtors

4

amend their petition. (Tr. 64-65.) On cross examination, the Trustee admitted that the information the Debtors supplied was responsive to what he requested. (Tr. 65.)

Believing many of the Payments to be preferential or pre-payments, the Trustee sent letters to the creditors seeking turnover of the funds transferred by the Debtors. The Trustee did not conduct any investigation into the disposition of the Payments before seeking their return. (Tr. 61.) Debtors' counsel subsequently sent letters to the IRS and RE/Max Premier suggesting they further investigate whether the Trustee had a legal basis to recover the funds. (Pl.'s Exs. 10, 11.) Despite counsel's letters, the IRS and RE/Max Premier returned the funds to the Trustee (Tr. 62); however, the IRS indicated that it did not believe the payment to be preferential (*id.*).

Roger D'Amico testified that his wife handled all of the household finances, as well as the bankruptcy filing. (Tr. 48, 52.) He further testified that he only met with their bankruptcy counsel to sign the papers and had no knowledge of the Payments made shortly before their bankruptcy case was filed. (Tr. 51.) The Debtors' character witness, Donald Smith, is a real estate broker at RE/Max Premier. As a coworker of Mrs. D'Amico for over ten years, Mr. Smith testified that he had never seen her intentionally misrepresent information. (Tr. 75, 77.)

## ARGUMENTS

The Trustee argues that the Debtors' discharge should be denied based upon their failure to disclose financial transactions conducted immediately prior to the filing of their petition. More specifically, the Trustee argues that the Debtors did not disclose three pertinent pieces of information: the Payments to creditors aggregating $19,598.80 made shortly before filing the petition, the sale of the Camaro to a relative for $20,000.00 immediately prior to filing, and the receipt of the $7,061.00 proceeds for liquidating the Annuity on the filing date. The Trustee

5

contends that the Debtors failed to disclose the information, even when given three opportunities to do so, namely in the petition, the amended petition, and the affidavit regarding their expenses. Finally, the Trustee maintains that the letters sent to the IRS and RE/Max Premier by the Debtors' counsel suggesting the Trustee had no legal basis to seek turnover of the funds demonstrates the Debtors' intent to hinder, since they took no steps to mitigate their counsel's actions. At the conclusion of trial, the Trustee indicated that the level of reckless disregard on the part of the Debtors and the inadequacy of their disclosure is prima facie evidence of the necessary intent needed to deny a discharge pursuant to § 727(a)(2)(A) and (4)(A). (Tr. 83.)

Although the Debtors admit that their petition was incomplete, they contend that the omissions were oversights because they hastily prepared the petition in order to file it before BAPCPA took effect. The Debtors argue that they voluntarily disclosed the liquidation of the Annuity and the sale of the Camaro at the § 341 meeting, shortly after they had discovered the omissions in their petition. Additionally, the Debtors maintain that they cooperated with the Trustee and complied with his requests for information and documentation. It is the Debtors' position that the Trustee has failed to prove they possessed the necessary fraudulent intent required to deny a discharge under § 727(a)(2)(A) and (4)(A).

## DISCUSSION

"To ensure that only honest debtors enjoy the privilege of a fresh start, the Bankruptcy Code provides . . . that a debtor may be denied a discharge from all of his or her debts under specific and well defined circumstances, *see* 11 U.S.C. § 727(a)(2)-(7)." *In re Gardner*, No. 03-13874, Adv. No. 04-90152, slip op. at 18 (Bankr. N.D.N.Y. Sept. 7, 2005). "A denial of discharge is an extremely drastic and harsh sanction; it is the death penalty of bankruptcy." *In re*

6

*Raymonda*, No. 99-13523, slip op. at 4 (Bankr. N.D.N.Y. Feb. 9, 2001). Accordingly, in the Second Circuit, § 727 objections to discharge are strictly construed against the objecting party. *See State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996). The plaintiff bears the burden of proving, by a preponderance of the evidence, the essential elements of an alleged objection to discharge. *In re Gollomp*, 198 B.R. 433, 440 (Bankr. S.D.N.Y. 1996) (citing *In re Bodenstein*, 168 B.R. 23, 28 (Bankr. E.D.N.Y. 1994). Once the plaintiff has satisfied its prima facie case, the burden shifts to the debtor to rebut the plaintiff's case. *Id.*

**Section 727(a)(2)**

Section 727(a)(2) provides for the denial of discharge if:

[T]he debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
    (A) property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A) (2004).

To support a § 727(a)(2)(A) cause of action, it must be shown that "(1) the debtor transferred, removed, destroyed, mutilated, or concealed (2) his or her property. . . (3) within one year of the petition filing date (for prepetition transfers) (4) with intent to hinder, delay or defraud a creditor." *In re Brundege*, 359 B.R. 22, 30 (Bankr. N.D.N.Y. 2007) (citing *In re Watman*, 458 F.3d 26, 32 (1st Cir. 2006)). Courts have construed "hinder or delay" to mean that the debtor possesses an actual fraudulent intent to significantly impair a creditor's collection efforts. *In re Bressler*, No. 06-11897, 2008 WL 686810, at *8 (Bankr. S.D.N.Y. Mar. 10, 2008) (citing *In re Marra*, 308 B.R. 628, 631 (Bankr. D. Conn. 2004)).

7

The Debtors do not dispute that they sold the Camaro, liquidated the Annuity, and made the Payments shortly before filing their petition; therefore, the first three elements of § 727(a)(2)(A) are satisfied. The determinative question is whether the Debtors possessed the fraudulent intent to hinder, delay, or defraud a creditor with respect to those transactions. Fraudulent intent may be inferred from the facts and circumstances of the case. *In re Gollomp*, 198 B.R. at 440 (citations omitted). Intent to defraud may be drawn from "badges of fraud," including:

> (1) the lack or inadequacy of consideration;
>
> (2) a family, friendship or close associate relationship between the parties;
>
> (3) the retention of possession, benefit or use of the property in question;
>
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and
>
> (6) the general chronology of the events and transactions under inquiry.

*Id.* (citations omitted).

The court finds that the Debtors did not possess the requisite fraudulent intent to hinder, delay, or defraud a creditor needed to sustain a § 727(a)(2)(A) cause of action. This conclusion rests upon the Debtors' credibility. The Debtors testified that they sold the Camaro for $20,000 and liquidated the Annuity to pay off their debts, in an attempt to avoid bankruptcy. (Tr. 39.) When asked why they ultimately filed, Mrs. D'Amico stated:

8

> [W]e sold the car hoping not to have to file. When the car wasn't enough money to pay everything I needed to pay, I took money out of my retirement and closed it and basically still realized that I had no commissions coming in, no pending business . . . so there was no way I could meet my obligations every month.

(Tr. 36-37.)

It is undisputed that the Annuity was incorrectly listed as an asset in the original petition. However, the Debtors deleted it from their amended schedule B prior to their § 341 meeting to clarify that the Annuity was not an asset as of the filing date as it was no longer in their possession. (§ 341 Meeting Tr. 11.) The Debtors provided proof that the Camaro was sold for fair market value, and they provided the Trustee with an accounting of the Payments, most of which appear to have been made in the ordinary course. While the court does not condone filing inaccurate schedules, the Debtors' testimony evidences that the inaccuracies were more a result of oversight due to the rush to file before BAPCPA took effect rather than with any intent to hinder, delay, or defraud creditors.

The Trustee's argument that the Debtors had a duty to mitigate their attorney's actions, with respect to the letters he sent to the IRS and RE/Max Premier, is unfounded. The Trustee cites no authority for this proposition. The letters were sent by counsel on his own accord, not at Debtors' insistence. There is nothing in the record to support a conclusion that counsel's actions should somehow be imputed to the Debtors, or to establish that the Debtors should have questioned their attorney's conduct.

### Section 727(a)(4)

Section 727(a)(4) provides for the denial of discharge if "the debtor knowingly and fraudulently, in or in connection with the case — (A) made a false oath or account. . . . " 11

9

U.S.C. § 727(a)(4)(A). The petition and attached schedules constitute a statement under oath for purposes of § 727(a)(4)(A). *See In re Bressler,* No. 06-11897, 2008 WL 686810, at *11 (Bankr. S.D.N.Y. Mar. 10, 2008) (citing *In re Gannon,* 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). A creditor objecting to discharge pursuant to § 727(a)(4) bears the burden of proving, by a preponderance of the evidence, that: (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew the statement was false, (4) the debtor made the statement with fraudulent intent, and (5) the statement related materially to the bankruptcy case. *In re Raymonda,* No. 99-13523, Adv. No.99-91199, slip op. at 5 (Bankr. N.D.N.Y. Feb. 9, 2001) (citations omitted).

It is undisputed that the Debtors omitted the sale of the Camaro, the liquidation of the Annuity, and the Payments from their sworn petition and schedules. It is also undisputed that the omissions related materially to their bankruptcy case. For purposes of § 727(a)(4)(A), omissions qualify as false statements. *See In re Bressler,* 2008 WL 686810, at *11 (citing *In re Boyer,* 367 B.R. 34, 45 (Bankr. D. Conn. 2007)). Thus, the first, second and fifth elements of § 727(a)(2)(A) have been met. The Debtors have a duty to carefully review their petition, schedules, and statements, and must insure accuracy and completeness. *See In re Zimmerman,* 320 B.R. 800, 806 (Bankr. M.D. Pa. 2005). As a result of this duty, the court finds the Debtors are deemed to have known the statements were false; thus, the third element is also satisfied. The remaining question is whether the Debtors made the false statements with fraudulent intent.

Under § 727(a)(4)(A), a false oath or account must be made both knowingly and fraudulently. *See In re Murray,* 249 B.R. 223, 230 (E.D.N.Y. 2000). A plaintiff must show that the omitted information in the debtor's schedules occurred because the debtor exhibited a

10

reckless indifference for the truth or intended to mislead his creditors, not because of mere carelessness or misunderstanding. *See In re Brundege*, 359 B.R. 22, 30 (Bankr. N.D.N.Y. 2007).

According to the Trustee, the Debtors knowingly and fraudulently omitted from their petition, schedules, and affidavit information about the sale of the Camaro, the liquidation of the Annuity, and the Payments, therefore demonstrating a reckless indifference for the truth. The Debtors have an affirmative duty to file accurate schedules and amended schedules. However, "if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge." *In re Ptasinski*, 290 B.R. 16, 23 (Bankr. W.D.N.Y. 2003).

The Debtors testified that, relying on their counsel, they assumed the petition was correct without review but, more significantly, they voluntarily disclosed the omitted information at their § 341 meeting, shortly after the deficiencies came to their attention. In addition, the court finds the Debtors' explanations for the omissions plausible. The Debtors and their counsel hastily prepared the petition and schedules so as to file before BAPCPA took effect. Once the deficiencies in the Debtors' petition were discovered, the Debtors brought them to the Trustee's attention. It is unclear why the Debtors' counsel did not amend the Debtors' Statement of Financial Affairs[3] to reflect the sale of the Camaro and the Payments, but there is no indication

---

[3] Item 3 asks petitioners to list all payments made to creditors within 90 days immediately preceding the commencement of the case. Item 10 asks petitioners to list all property, other than property transferred in the ordinary course of the financial affairs of the debtor, transferred within one year immediately preceding the commencement of the case. Debtors checked "None" in response to both questions. (Pl.'s Exs. 1, 2.)

that counsel's failure to amend the Debtors' schedules was the result of the Debtors' failure to cooperate.

This case is distinguishable from *In re Raymonda*, No. 99-13523, Adv. No.99-91199 (Bankr. N.D.N.Y. Feb. 9, 2001), where this court denied the debtor's discharge pursuant to § 727(a)(4) because he omitted possession of valuable tools from his petition and schedules. In *Raymonda*, the court found the debtor's testimony evidenced his fraudulent intent to conceal his tools. In contrast, in the case *sub judice*, the court finds the Debtors' testimony evidences that the omissions were the result of innocent oversight due to the scramble to file the Debtors' petition prior to October 17, 2005. Given the circumstances surrounding the filing of this case, the omissions do not rise to the level of reckless indifference, nor do they evince the fraudulent intent apparent in *Raymonda*.

## CONCLUSION

After careful review of the record, the court concludes that the Trustee has not established fraudulent intent on the part of the Debtors needed to sustain his § 727(a)(2)(A) and § 727(a)(4) causes of action. As a result, the complaint is hereby dismissed.

It is so ORDERED
Dated: October 9, 2008                                   /s/ Robert E. Littlefield, Jr.
       Albany, New York                                  Hon. Robert E. Littlefield, Jr.
                                                         U.S. Bankruptcy Judge

O:M101(07/16/2006)A

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Roger C D'Amico and Theodora K D'Amico, <br><br> Debtor(s) <br><br> Gregory G. Harris, , <br> Plaintiff <br><br> v. <br><br> Roger C D'Amico, et al., <br> Defendant | Case No. 05-19217-1-rel <br><br> Chapter 7 <br><br> Adv. Proc. No. 06-90188-1-rel |

## CERTIFICATE OF MAILING

The deputy clerk indicated below of the United States Bankruptcy Court for the Northern District of New York at Albany, hereby certifies that on this date a true copy of the foregoing document was mailed via either the United States Postal Service or sent electronically to registered users of the Northern District of New York CM/ECF system as shown below:

Gregory G. Harris, Chapter 7 Trustee
The Patroon Building
Five Clinton Square

Roger C D'Amico
Theodora K D'Amico
23 Windrose Way
Watervliet, NY 12189

U.S. Trustee
Diana G. Adams
74 Chapel Street
Suite 200
Albany, NY 12207

Date: 10/9/08

Vicki A Rodriguez
Deputy Clerk